IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS HOWARD EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-98-C-1861-W |
| | ) | |
| BEVERLY BELL-SHAMBLEY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

MAR 2 6 2002

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Douglas Howard Evans, alleges that his constitutional rights have been violated during his detention at the Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. The *pro se* amended complaint was filed on August 24, 1998, naming as defendants Beverly Bell-Shambley,[1] formerly Clinical Director of Taylor Hardin Secure Medical Facility, and Dr. James F. Hooper, a physician at Taylor Hardin. Plaintiff seeks injunctive relief.

On October 27, 2000, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the amended complaint. On October 29, 2001, the defendants filed their special report attaching documents and the affidavits of the defendants. By Order of December 7, 2001, the parties were notified that the special report filed by

---

[1] The court notes that plaintiff misspelled defendant Beverly Bell-Shambley's last name in his amended complaint. The correct spelling is Bell-Shambley not Bell-Shambly as stated by plaintiff in his amended complaint.



the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response to the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. Plaintiff was admitted to Taylor Hardin Secure Medical Facility on February 3, 1997 (defendant Hooper's affidavit page one). Plaintiff was committed to the Alabama Department of Mental Health and Mental Retardation for treatment and restoration to competency following a determination that he was not competent to stand trial on a charge of murder (defendant Hooper's affidavit page one).

Defendant Bell-Shambley has a Ph.D. in clinical psychology and is not authorized to prescribe medication (defendant Bell-Shambley's affidavit page one). Defendant Bell-Shambley has never prescribed medication for patients of the Alabama Department of Mental Health and Mental Retardation. As the Clinical Director at Taylor Hardin, the only involvement she had with prescribing medication was her role as Chair of the Special Case Review Committee (defendant Bell-Shambley's affidavit page one). One of the functions of the Special Case Review Committee is to conduct administrative reviews, pursuant to Department Policy 430-20, to determine whether

3

an incompetent patient who is refusing psychiatric medication should be required to take that medication (defendant Bell-Shambley's affidavit page one). Defendant Bell-Shambley chaired meetings of the Special Case Review Committee which addressed the refusal of plaintiff to take psychiatric medication in both June, 1997 and February, 2000 (defendant Bell-Shambley's affidavit page two). In both instances, the Committee recommended that plaintiff be required to take medications to treat his psychiatric condition. In reaching the conclusion that plaintiff's psychiatric condition warranted such, the Committee considered, in both cases, the potential side effects of the medication, and the likely benefit to plaintiff from taking the medication (defendant Bell-Shambley's affidavit page two).

    Defendant Hooper is a psychiatrist at Taylor Hardin Secure Medical Facility (defendant Hooper's affidavit page one). Defendant Hooper received his medical degree in 1973 and is certified by the American Board of Psychiatry and Neurology in both general and forensic psychiatry (defendant Hooper's affidavit page one). Defendant Hopper was plaintiff's psychiatrist for a period of time beginning in either December, 1997 or January, 1998 and ending December 5, 1998 (plaintiff's amended complaint attached page and defendant Hooper's affidavit page one). During the time defendant Hooper was plaintiff's treating psychiatrist, plaintiff was suffering from a serious mental illness. His diagnosis was Paranoid Schizophrenia (defendant Hooper's affidavit pages one and two). During the period of time that plaintiff was under defendant Hooper's care, defendant Hooper prescribed psychiatric medications for him (defendant Hooper's affidavit page two). The medications were prescribed after careful consideration of any potential side effects of the medication in conjunction with the likely benefit to plaintiff from taking the medication (defendant Hooper's affidavit page two). Defendant Hooper prescribed Haldol Decanoate, 300 mg. every

fourteen days by injection; Haldol, 30 mg. orally every night; and Artane, 5 mg. per day (for side effects). Defendant Hooper started plaintiff on two 1000 mg. tablets of Respirdal, an anti-psychotic medication, daily without stopping the Haldol which plaintiff was already receiving (plaintiff's amended complaint attached page and defendant Hooper's affidavit page two). This course of action is a totally acceptable use of anti-psychotic medication to treat the sort of serious mental illness which plaintiff has and is consistent with the standard of care in this area of medicine (defendant Hooper's affidavit page two). Plaintiff has requested that the drugs which are given to him in liquid form and the drugs which are injected be given to him in pill form on several occasions, but his requests have been to no avail (plaintiff's amended complaint attached page). The defendants insist that the drugs be forced upon plaintiff despite the negative effects of the drugs upon him (plaintiff's amended complaint attached page).

## DISCUSSION

The court notes that in this case, the plaintiff is not a convicted prisoner. He is a person who is being detained in a secure medical facility who is accused of a violation of criminal law. The term prisoner has been defined to mean any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 28 U.S.C. § 1915A(c). Clearly, plaintiff falls within this definition of prisoner.

The Due Process Clause of the Fourteenth Amendment requires a state to provide a pretrial detainee "with some minimal level" of "such basic necessities as food, living space, and medical care." *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). The due process rights of a pretrial detainee "are at least as great as the Eighth

5

Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Neither will a mere difference of an opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. at 106-8.

In *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every illness or injury invokes the constitutional protection -- only those that are 'serious' have that effect." *Evans v. San Quentin State Prison*, 1991 WL 438695, at *1 (N.D. Cal. Apr. 1, 1991), *quoting Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In *Estelle,* the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as requiring medical treatment, 'or one that is so obvious that even a lay person would recognize the need for a doctor's attention'"

*Evans*, 1991 WL 43695, at *1, *quoting Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977). *See also Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973).

      The plaintiff in this action does not contend that he has been denied medical treatment. He simply disagrees with the treatment that he has received. Plaintiff's first claim is that defendants Bell-Shambley and Hooper have forced drugs upon him without regard to the effects that the drugs have upon him. It is undisputed that plaintiff was committed to the Alabama Department of Mental Health and Mental Retardation for treatment and restoration to competency following a determination that he was not competent to stand trial on a charge of murder. It is further undisputed that plaintiff has been diagnosed as having Paranoid Schizophrenia which is a serious mental illness. Defendant Bell-Shambley states in her sworn and undisputed affidavit that in June, 1997 and again in February, 2000, she chaired meetings of the Special Case Review Committee which addressed the refusal of plaintiff to take psychiatric medication. Defendant Bell-Shambley states further in her sworn affidavit that in both instances, the Committee noted that plaintiff was very delusional and that he was hearing voices. Defendant Bell-Shambley also states in her sworn affidavit that in both cases, the Committee recommended that plaintiff be required to take medications to treat his psychiatric condition. In her sworn affidavit, defendant Bell-Shambley states that in reaching the conclusion that plaintiff's psychiatric condition warranted that he be required to take the medications, the potential side effects of the medications and the likely benefit to plaintiff from taking the medications were considered. Defendant Hooper states in his sworn and undisputed affidavit that during the period of time that plaintiff was under his care, he did prescribe psychiatric medications for plaintiff and that he prescribed the medications after carefully considering any potential side effects of the medications in conjunction with the likely benefit to plaintiff from taking

the medications. It is clear that the defendants did consider the effect that the medications plaintiff was required to take would have upon plaintiff prior to requiring him to take the medications. Further evidence that the effect that the medications would have upon plaintiff was considered prior to plaintiff being required to take the medications is the fact that defendant Hooper prescribed Artane, 5 mg. per day, for side effects.

The defendants also considered the likely benefit to plaintiff from taking the medications and, in their opinion, the likely benefit to plaintiff from taking the medications outweighed the side effects of the medications. According to the Special Case Review dated June 17, 1997, attached to the defendants' special report as Exhibit G, the review committee noted that plaintiff experiences serious deterioration in his mental status when he is noncompliant with his psychotropic medication and that he also becomes noncompliant with medical treatment for diabetes mellitus. The consensus from the review was that plaintiff was in need of anti-psychotic medication for controlling symptoms of the diagnosed illness of Schizophrenic Disorder, Paranoid Type and that absent sufficient medication, plaintiff would continue to deteriorate and he would become noncompliant with the treatment of his medical problems (diabetes mellitus). It was recommended that plaintiff received Decanoate medication by force if necessary. It is clear that plaintiff has a serious medical need. It is equally clear that the defendants' response to that need did not amount to deliberate indifference. The defendants are entitled to summary judgment with respect to plaintiff's claim that they forced him to take psychiatric medication without regard to the effects that the drugs have upon him.

Plaintiff's second claim is that defendant Bell-Shambley "said" that he would be given liquid medication by mouth and by injection instead of being given pills. Plaintiff claims that the use of liquid medication "leave open the abuse of dosage sizes". Plaintiff claims that on or about December

18, 1997, a nurse named Iris Steele injected him with four times the usual dose of medication which left him dizzy and swooning of the head. It claims further that although it is written that he is to take 30 mg. of liquid Haldol, with the approval of the doctors at Taylor Hardin, the nurses are giving him 15 ml. of liquid Haldol daily. Plaintiff maintains that defendant Bell-Shambley wants the drugs to be given in liquid form by mouth and injections "for the sole purpose to allow for extreme overdoses of doses sizes".

Defendant Bell-Shambley states in her sworn and undisputed affidavit that she has never prescribed medication for patients of the Alabama Department of Mental Health and Mental Retardation because she is not authorized to prescribe medication. In determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. In addition to the facts stated by the non-moving plaintiff, the court must also take into account those facts stated by the defendants which are not disputed by the plaintiff. Facts submitted by a defendant and not expressly disputed by the plaintiff cannot be ignored because they too are "undisputed" facts. As the Supreme Court explained in *Celotex*, the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendants which, if left undisputed, show that the plaintiff is not entitled to recover in the action. In this case plaintiff has failed to rebut the specific facts of defendant Bell-Shambley. It is undisputed that defendant Bell-Shambley could not have authorized that plaintiff be given overdoses of his medications, because as the holder of a Ph.D. in clinical psychology, she is not authorized to prescribe medication. Plaintiff has not disputed that defendant Bell-Shambley is not authorized to prescribe medication nor has he presented any evidence that

10

defendant Bell-Shambley has ordered nurses to give him overdoses of his medications. Defendant Bell-Shambley is therefore entitled to summary judgment on this claim.

The court notes further that defendant Hooper, who is authorized to prescribe medication and who, as plaintiff's treating psychiatrist, did in fact prescribe medication for plaintiff, states in his sworn and undisputed affidavit that at no time did he prescribe a dosage of any medication which would be considered inappropriate or excessive. Plaintiff has failed to present any evidence to support his claim that he is receiving overdoses of his medications. This is simply a mere difference of an opinion between the plaintiff and the institution's medical staff as to treatment. As previously noted, a mere difference of opinion between an inmate and the institution's medical staff as to treatment alone does not give rise to a cause of action under the Eighth Amendment.

Plaintiff's final claim is that defendant Hooper prescribed an additional medication for him without discontinuing the medication that plaintiff was already taking. Defendant Hooper states in his sworn and undisputed affidavit that he did add the anti-psychotic medication, Respirdal, to the medications plaintiff was already receiving on July 13, 1998. He states that the Respirdal was prescribed in addition to the anti-psychotic, Haldol. Defendant Hooper states in his sworn affidavit that this course of action is a totally acceptable use of anti-psychotic medication to treat the sort of serious mental illness which plaintiff has and that the course of action is consistent with the standard of care in this area of medicine. Plaintiff has failed to present any evidence to support his claim that defendant Hooper did anything wrong when he prescribed Respirdal for plaintiff in addition to Haldol. As above, this is simply a mere difference of an opinion between the plaintiff and the institution's medical staff as to treatment and, as previously noted, a mere difference of opinion between an inmate and the institution's medical staff as to treatment alone does not give rise to a

cause of action under the Eighth Amendment. Plaintiff has failed to show that defendant Hooper was deliberately indifferent to his serious medical needs. Defendant Hooper is therefore entitled to summary judgment with respect plaintiff's claim that he prescribed an additional medication for plaintiff without first discontinuing the medication that plaintiff was already taking.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Beverly Bell-Shambley and Dr. James F. Hooper are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Beverly Bell-Shambley and Dr. James F. Hooper's motion for summary judgment is due to be GRANTED and this action against defendants Beverly Bell-Shambley and Dr. James F. Hooper DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 25th day of March, 2002.

_____
U. W. CLEMON
CHIEF UNITED STATES DISTRICT JUDGE